UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

YVONNE ORTIZ-FISHER,     )
     )
     **Plaintiff,**     )
     )     **No. 3:13-cv-1168**
**v.**     )     **Judge Sharp/Brown**
     )
CAROLYN W. COLVIN,     )
COMMISSIONER OF     )
SOCIAL SECURITY,     )
     )
     **Defendant.**     )

**To: The Honorable Kevin H. Sharp, United States District Judge**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks review of the Social Security

Administration Commissioner's decision denying Plaintiff's application for period of disability

and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). For

the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for

judgment on the administrative record (DE 16)[1] be **DENIED** and the Commissioner's decision

be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff applied for period of disability and DIB in July 2010, claiming she was unable to

work due to problems with her right knee, carpal tunnel syndrome, hepatitis B, asthma, pain, and

depression. (DE 14, pp. 70, 74, 108-109).[2] Plaintiff's request was denied in December 2010 and

again upon reconsideration in May 2011. (DE 14, pp. 62-63, 67-75). She requested a hearing

before an administrative law judge ("ALJ") which took place in March 2012. (DE 14, p. 28). The

---

[1] "DE" refers to Docket Entry.
[2] Page citations to the Administrative Record (DE 14) refer to the black number in the bottom right corner of each
page.

ALJ issued an unfavorable decision on May 29, 2012, based on the following findings of fact and conclusions of law:

(1) The claimant meets the insured status requirements of the Act through December 31, 2015.

(2) The claimant has engaged in substantial gainful activity ("SGA") since February 15, 2010, the alleged onset date.

(3) The claimant has the following severe impairments: arthritis of the right knee, status post-surgery.

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that the claimant can only stand, walk , and sit for up to six hours in an eight-hour workday with normal breaks. She can only occasionally use her right lower extremity to push or pull or operate foot controls, can only occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolds. Additionally, the claimant can only occasionally balance, stoop, kneel, crouch, or crawl.

(6) The claimant is capable of performing past relevant work as an insurance sales agent and tax preparer. This work does not require the performance of work-related activities precluded by the claimant's RFC.

(7) The claimant has not been under a disability, as defined in the Act, from February 15, 2010, through the date of this decision.

(DE 14, pp. 9-22). On August 19, 2013, the Appeals Council declined to review the ALJ's decision. (DE 14, p. 1). Plaintiff filed a complaint with this Court on October 22, 2013. (DE 1).

Defendant filed an answer and the administrative record on January 27, 2014. (DE 13, 14).

Plaintiff then moved for judgment on the administrative record (DE 16, 17), to which Defendant responded (DE 18), and Plaintiff replied (DE 19). The matter is properly before the Court.

## II. REVIEW OF THE RECORD

## A. MEDICAL EVIDENCE

1. **Physicians Medical Care – Dr. Martin Glynn, M.D**

Plaintiff was treated at Physicians Medical Care on February 15, 2010, after slipping on ice and injuring her right knee. (DE 14, p. 235). Dr. Glynn noted a contusion and swelling in Plaintiff's knee, but indicated that permanent disability was not likely. (DE 14, pp. 234-235). She was sent back to work from February 15 to 19, 2010 with sitting limitations, but she could walk to her car and to the bathroom. (DE 14, p. 234). After looking at "three views" of Plaintiff's right knee, Dr. Winters, M.D., found degenerative bone changes. (DE 14, p. 236). Plaintiff's knee was still swollen on February 19, 2010. (DE 14, p. 232). On February 26, 2010, Dr. Glynn noted no swelling and no reason or cause for the pain Plaintiff reported. (DE 14, p. 231). Dr. Glynn also noted that Plaintiff was able to put on a knee brace but had complained that the doctor's "slightest touch" was too painful to bear. (DE 14, p. 231). Plaintiff was returned to work from February 26 to March 5, 2010 with sitting restrictions. (DE 14, p. 229).

2. **Tennessee Spine and Sports Medicine – Dr. Thomas O'Brien, M.D.**

On April 8, 2010, Dr. O'Brien noted that MRIs of Plaintiff's right knee showed medial and lateral meniscus tears and degenerative joint disease. (DE 14, p. 243). He performed a right knee arthroscopy and partial meniscectomy on Plaintiff, after which her range of motion was 0-110 degrees, and she could work with sitting restrictions. (DE 14, pp. 242-243). Plaintiff saw Dr. O'Brien on May 20 and June 10, 2010, during which he noted degenerative joint disease in the knee, a range of motion at 0-115 degrees, and a tight feeling with forward flexion. (DE 14, pp. 240-241). On July 8, 2010, Dr. O'Brien released Plaintiff to maximum improvement with only a five percent "permanent partial impairment of the right lower extremity," and permanent "no repetitive squatting, no repetitive kneeling" restrictions. (DE 14, p. 239). Plaintiff's range of motion was 0-120 degrees. (DE 14, p. 239).

### 3. Volunteer Behavioral Health Care System ("Guidance Center") – Lochia Farrar, LPE and SPE[3]

Ms. Farrar completed Plaintiff's intake assessment on February 22, 2011. (DE 14, pp. 289-292). On March 8, 2011, Ms. Farrar counseled Plaintiff regarding depression and combatting stress. (DE 14, p. 280). Ms. Holly Bechard, MSN,[4] met with Plaintiff on March 14, 2011, for her initial medication appointment. (DE 14, p. 283). After listening to Plaintiff's complaints, Ms. Bechard indicated that Plaintiff had major depressive disorder single episode moderate, her current GAF[5] score was fifty-five, and her highest GAF score was sixty-five. (DE 14, p. 284). On April 5, 2011, Plaintiff saw Ms. Farrar again and noted that she was emotional but no longer suicidal after taking Paxil. (DE 14, p. 282). She repeated the same comments to Ms. Bechard on April 18, 2011. (DE 14, p. 285). Plaintiff's GAF on April 18, 2011 was sixty. (DE 14, p. 286). On June 13, 2011, Ms. Bechard reported that Plaintiff's GAF was sixty-five and noted side effects from Plaintiff's antidepressant medication. (DE 14, pp. 348-349). Between July 2011 and February 2012, Plaintiff was treated for depression and interpersonal problem with her daughter. (DE 14, pp. 360-390).

Ms. Farrar completed a medical source statement on January 19, 2012. (DE 14, pp. 357-359). She noted that Plaintiff's impairments did not affect her ability to understand, remember, and carry out instructions or her ability to interact appropriately with supervision, co-workers, the public, and changes in a routine work setting. (DE 14, p. 357-358). She did note, however, that Plaintiff's major depression and chronic depression affect her ability to function and that Plaintiff cannot work full time. (DE 14, p. 358).

---

[3] Throughout the record, Ms. Farrar is referred to as both a Licensed Psychological Examiner and a Senior Psychological Examiner.
[4] Master of Science in Nursing
[5] According to the Global Assessment of Functioning scale, a GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

### 4. Tennessee Orthopaedic Alliance – Dr. Robert Greenberg, M.D.

On February 21, 2011, Plaintiff saw Dr. Greenberg regarding her right knee pain. (DE 14, p. 326). According to Dr. Greenberg, Plaintiff had endstage osteoarthritis, right knee arthritis, a history of rheumatoid arthritis, hepatitis B, asthma, and a history of rheumatic disease and possible cardiac disease. (DE 14, pp. 326-327).

### 5. Primary Care and Hope Clinic – Karla Luker, CFNP[6]

Ms. Luker treated Plaintiff from August 2009 to May 2011. In addition to treating Plaintiff for the flu and allergies, she noted that Plaintiff has asthma. (DE 14, pp, 328-347).

## B. CONSULTATIVE ASSESSMENTS

### 1. Consultative Examination Report – Maryann Kennedy

On December 16, 2010, Ms. Kennedy completed a vocational analysis worksheet for Plaintiff. She reported that Plaintiff would be limited to lifting a maximum of twenty pounds and frequently lifting ten pounds, standing and walking for six hours, sitting for six hours in an eight-hour day, and occasionally pushing and pulling with her right leg. (DE 14, p. 168). Plaintiff's vision was limited with regard to far acuity, and Plaintiff's postural limitations included frequent balancing and stooping, never climbing ladders, and occasional stair climbing, kneeling, crouching, and crawling. (DE 14, p. 168). She found that Plaintiff could perform her former job of insurance sales agent. (DE 14, p. 169).

### 2. Consultative Examination Report – James Allsbrooks

Mr. Allsbrooks examined Plaintiff on May 6, 2011, finding the same RFC limitations as Ms. Kennedy. (DE 14, p. 210). He additionally found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and was moderately limited in her ability to perform at a consistent pace

---

[6] Certified Family Nurse Practitioner

without an unreasonable number and length of rest periods. (DE 14, p. 210). In his opinion, Plaintiff could perform the past relevant work of a "clerk general (clerical)." (DE 14, p. 211).

### 3. Medical Source Statement – Dr. Woodrow Wilson, M.D.

Dr. Wilson completed a Medical Source Statement for Plaintiff on October 6, 2010. (DE 14, p. 249). He noted that Plaintiff could continuously lift and carry twenty pounds, occasionally lift and carry fifty pounds, and never lift or carry more than fifty pounds due to her right knee pain and asthma. (DE 14, p. 249). Plaintiff could sit for two hours without interruption, stand and walk for fifteen minutes without interruption, sit seven hours in an eight-hour day, and stand and walk for an hour in an eight-hour day. (DE 14, p. 250). As a result of her right knee pain and surgery, she required a cane to walk longer than half a block. (DE 14, p. 250). Plaintiff's bilateral carpel tunnel syndrome reduced her ability to frequently handle, finger, feel, push, or pull. (DE 14, p. 251). Operating foot controls with her right foot was limited to occasional instances. (DE 14, p. 251). She could never climb ladders, kneel, crouch, crawl; occasionally climb stairs and balance; and frequently stoop. (DE 14, p. 251). Plaintiff's right knee pain and asthma restricted her work environment conditions. (DE 14, pp. 252-253).

### 4. Physical RFC Assessment – Dr. Christopher W. Fletcher, M.D.

On December 7, 2010, Dr. Fletcher completed a physical RFC assessment for Plaintiff. (DE 14, pp. 259-267). He opined that she could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours, and sit for six hours in an eight-hour day. (DE 14, p. 260). Plaintiff's ability to push and pull with her lower extremities was limited, and Plaintiff could frequently balance and stoop, never climb ladders, and occasionally climb stairs, kneel, crouch, and crawl. (DE 14, pp. 260-261). After reviewing Plaintiff's medical records, Dr. Fletcher did not find Plaintiff's allegations fully credible regarding her carpal tunnel syndrome,

hepatitis B, or asthma. (DE 14, p. 266). Dr. Charles S. Settle, M.D., affirmed this assessment on April 7, 2011. (DE 14, p. 319).

### 5. Consultative Examination Report – Philip H. Barkley, M.A.

Mr. Barkley, a licensed psychological examiner, examined Plaintiff on April 6, 2011. (DE 14, pp. 273-277). Plaintiff drove herself to the appointment and walked with a cane. (DE 14, p. 273). During the examination, Plaintiff was slightly depressed. (DE 14, p. 275). Her ability to understand and remember was not significantly limited, and she performed in the normal range of intellectual functioning. (DE 14, p. 275). Mr. Barkley believed her short and long term memory were grossly intact, and he found no problems with her ability to sustain concentration and persistence during the interview. (DE 14, p. 277). Plaintiff's ability to interact in a socially appropriate manner was not significantly limited. (DE 14, p. 277). His diagnostic impressions included depressive disorder and posttraumatic stress disorder. (DE 14, p. 277).

### 6. Psychiatric Review Technique and Mental RFC Assessment – Dr. Jenaan Khaleeli, PsyD[7]

On April 28, 2011, Dr. Khaleeli completed a psychiatric review technique for Plaintiff. (DE 14, p. 298). Plaintiff's depressive disorder and PTSD were medically determinable impairments, but they did not satisfy the diagnostic criteria for affective disorders or anxiety-related disorders. (DE 14, pp. 301, 303). Reviewing the "B" criteria of the listings, Plaintiff had no restrictions in activities of daily living or episodes of decompensation, had mild difficulty maintaining social functioning, and had moderate difficulty maintaining concentration, persistence, and pace. (DE 14, p. 304). Plaintiff did not meet the "C" criteria. (DE 14, p. 309).

Dr. Khaleeli also completed a mental RFC assessment for Plaintiff on April 28, 2011. (DE 14, p. 312). She noted that Plaintiff's understanding and memory, sustained concentration

---

[7] Doctor of Psychology

and persistence, social interaction, and adaptation were not significantly limited. (DE 14, pp. 312-313). Only Plaintiff's abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods were moderately limited. (DE 14, p. 313). Plaintiff could understand and remember simple and 1-3 step detailed tasks, concentrate and persist for at least two hours at a time in an eight-hour day with breaks, interact appropriately with the public, co-workers, and supervisors, and adapt to change. (DE 14, p. 314).

## C. PLAINTIFF'S TESTIMONY

Plaintiff has a driver's license and a college degree. (DE 14, pp. 33-34). She testified that she drove to work and to her daughter's house. (DE 14, p. 34). In addition to interacting with her family, Plaintiff attends church. (DE 14, p. 50). Around the house, she makes breakfast, loads the dishwasher, washes clothing, vacuums in sections, reads, watches her granddaughter, and uses a computer. (DE 14, p. 50). Plaintiff claimed her disability began in February 2010 and estimated that she earned five thousand dollars working temporarily for H&R Block during the 2011 tax season. (DE 14, pp. 34-35). During peak season, working at H&R Block required staying in the office for eight hours, all of which was seated. (DE 14, p. 48). Although she could sit for eight hours at a time, she stated she could only sit comfortably for half an hour, she can only stand for fifteen to twenty minutes before needing to sit, and the heaviest thing she lifts at H&R Block is a pile of paper. (DE 14, pp. 49, 52).

Plaintiff testified that she last visited the Hope Clinic in May 2011, and she visits the Guidance Center monthly. (DE 14, pp. 42-43, 45). According to Plaintiff, she cannot work due to the pain in her knee which makes her irritable. (DE 14, pp. 46-47, 52). Plaintiff also indicated that pain interferes with her concentration and her ability to remember tax law. (DE 14, p. 53).

Her average daily pain level is a six on a scale of one to ten, and she cannot sleep without taking Ibuprofen for the pain. (DE 14, pp. 47-48). She stated that her knee swells when it is lowered for longer than an hour and that she was not taking any medication to control the swelling. (DE 14, p. 51). Plaintiff uses a cane which was prescribed by the doctor who performed her right knee surgery in April 2010. (DE 14, p. 43). Although she had not been advised to keep using the cane, she stated that she falls too often when she does not use it. (DE 14, p. 44). In addition to taking Ibuprofen to help her sleep, she was also taking antidepressants, which she claimed give her severe headaches. (DE 14, p. 44).

In a disability report dated July 22, 2010, Plaintiff reported taking Loratab for pain, which she later stated causes sleepiness. (DE 14, pp. 148, 159). She reported in December 2011 that she was taking Paroxetine to control her depression. (DE 14, p. 226). In a function report dated August 5, 2010, Plaintiff stated she could only stand and walk for forty-five minutes per day, she needed to use a cane or crutches to walk, and her carpel tunnel limited her typing and writing. (DE 14, p. 153). She reported taking care of her granddaughter and pets. (DE 14, p. 153). She did not need reminders to take medicine, and she could do limited cooking and housework. (DE 14, p. 154). Plaintiff went shopping two or three times a month for an hour. (DE 14, p. 155). She could pay bills, count change, handle a savings account, and use a checkbook and money orders. (DE 14, p. 155). According to Plaintiff, she is limited in her ability to lift, squat, stand, walk, sit, kneel, climb stairs, use hands, and get along with others. (DE 14, p. 157).[8] More specifically, she stated she could not lift more than thirty pounds or walk ten feet without stopping; she must elevate her knee or leg when sitting; and she cannot squat or kneel. (DE 14, p. 157). Plaintiff also reported being unable to concentrate for longer than twenty minutes, she could finish was she started, she has an average ability to follow spoken instructions, she gets

[8] The checklist form Plaintiff completed did not offer "crouching" limitations as an option.

along with authority figures, she has never been fired or laid off because of inter-personal problems, and she does not handle stress or changes to her routine well. (DE 14, p. 157-158). In a function report dated February 23, 2011, Plaintiff stated she could not stand for more than ten to fifteen minutes at a time. (DE 14, p. 198). She again stated she did not need reminders to take medicine. (DE 14, p. 200). According to Plaintiff, attending church prevented her from committing suicide. (DE 14, p. 202).

### D.  VOCATIONAL EXPERT'S TESTIMONY

The ALJ presented the following hypothetical to the vocational expert ("VE"): an individual of advanced age with a similar educational and work background as Plaintiff, who could lift twenty pounds occasionally and ten pounds frequently, stand and walk for six hours and sit for six hours in an eight-hour workday with normal breaks, occasionally use their lower right extremity to operate foot controls and other tasks, frequently balance and stoop, occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, and occasionally kneel, crouch, or crawl. (DE 14, p. 55). The VE testified that the insurance sales agent and tax preparer jobs both fit within those restrictions. (DE 14, p. 56).

Adding on to the first hypothetical, the ALJ proposed an individual who could sustain concentration for at least two-hour periods of time but had some problems with concentration. (DE 14, p. 56). The VE testified that such an individual could not perform the insurance sales agent and tax preparer jobs. (DE 14, p. 56).

The ALJ proposed another hypothetical: a person who could continuously lift and carry twenty pounds, could sit up to seven hours and stand or walk up to one-hour each in an eight-hour day, could sit for two-hour intervals, could stand and walk for fifteen minutes at a time, and

had the other limitations in the first hypothetical. (DE 14, p. 57). The VE testified that the tax preparer job would fit in that category. (DE 14, p. 57).

Plaintiff's attorney asked what impact a seven-hour sitting restriction would have on the tax preparer job, to which the VE responded that with the two fifteen-minute breaks in an eight-hour day, "in reality virtually any sedentary job . . . would fit." (DE 14, pp. 57-58). Plaintiff's attorney also asked what limitations would be imposed by an inability to sustain concentration, persistence, and pace for less than two hours. (DE 14, p. 59). The VE testified that the individual would not be able to perform the tax job but would be able to perform an unskilled job. (DE 14, p. 59). According to the VE, limitations on frequent handling, fingering, feeling, pushing, and pulling with Plaintiff's right hand and limitations on frequent feeling with her left hand should not affect her tax work. (DE 14, p. 60).

## III. CONCLUSIONS OF LAW

### A. STANDARD OF REVIEW

This Court reviews the record to determine whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ made those findings in accordance with the correct legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). "Substantial evidence is less than a preponderance but more than a scintilla." *Id.* The ALJ's decision shall be upheld if the evidence in the record is such that a "reasonable mind might accept [it] as adequate to support a conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013). This is true even when substantial evidence favors an opposite conclusion. *Id.* Failure to follow the proper legal standards implies a lack of substantial evidence. *Id.*

### B. PROCEEDINGS AT THE ADMINISTRATIVE LEVEL

A claimant is "disabled" within the meaning of the Act if an extended medically determinable physical or mental impairment prevents her from engaging in SGA. 42 U.S.C. §§ 416(i); 423(d). The SSA assesses disability under a five-step test:

(1) If the claimant is engaged in SGA, the claimant is not disabled.

(2) If the claimant's physical or mental impairment, or combination of impairments, is not severe or does not meet the duration requirement, the claimant is not disabled.

(3) If the claimant's impairment(s) meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled, and the inquiry ends.

(4) Based on the claimant's RFC, if the claimant can still perform past relevant work, the claimant is not disabled.

(5) If the claimant's RFC, age, education, and work experience indicate that the claimant can perform other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4).

From step one through step four, the burden of proof is on the claimant. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). At step five, the burden shifts to the Commissioner, who may meet this burden by "identify[ing a] significant number of jobs in the economy that accommodate the claimant's [RFC] and vocational profile." *Id.*

## C. PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff claims (1) the ALJ did not properly consider Ms. Farrar's opinion, (2) the ALJ did not properly consider the permanent restrictions announced by Dr. O'Brien, (3) the ALJ erred in establishing which of Plaintiff's impairments are "severe," and (4) the ALJ improperly evaluated Plaintiff's credibility. (DE 17).

### 1. The ALJ Gave Adequate Weight to Ms. Farrar's Medical Source Statement

According to Plaintiff, the ALJ erred by not reciting Ms. Farrar's medical source statement in the ALJ's assessment. Specifically, Plaintiff claims the ALJ should have included

Ms. Farrar's statements that Plaintiff's conditions "affected her ability to function" and "she cannot work full-time." The ALJ did not err for the following two reasons: (1) disability determinations are reserved to the Commissioner, and (2) the ALJ complied with SSR 06-03P in evaluating Ms. Farrar's opinion.

First, opinions regarding a claimant's ability to work are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5P, 1996 WL 374183, at *5 (July 2, 1996). Even a treating physician's conclusory statement that the claimant cannot work full-time is not granted controlling weight. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) ("Dr. Wright's statement that Turner was not 'currently capable of a full-time 8–hour workload' was simply an alternate way of restating his opinion that Turner was 'unable to work.' It was thus an opinion on an issue reserved to the Commissioner and was not entitled to any deference."). Ms. Farrar's opinion that Plaintiff could not work full-time is not entitled to any weight.

Second, the ALJ complied with SSR 06-03P. As a senior psychological examiner, Ms. Farrar is classified as an "other source." 20 C.F.R. § 404.1513(d). Though not automatically granted the weight of a treating physician's opinion, her opinions should be considered in determining the severity and functional effects of Plaintiff's impairments. SSR 06-03P, 2006 WL 2329939, at *3, 6 (Aug. 9, 2006). The ALJ should explain the weight given to "other source" opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. Factors to be considered include: the length of the relationship, whether the opinion is consistent with other evidence, if the source presents

evidence supporting the opinion, if the source explains the opinion well, and if the source is a specialist. *Id.* at *4–5.

The ALJ complied with SSR 06-03P in concluding that "the medical records reflect that the claimant's depression has not caused more than minimal limitations in the claimant's ability to perform basic work activities and is, therefore, non-severe." (DE 14, p. 16). While assessing the effect of Plaintiff's depression on her ability to perform basic mental work activities, the ALJ referenced progress notes provided by Ms. Farrar and other Guidance Center staff. (DE 14, p. 16). These cited records include Ms. Farrar's medical source statement. While the ALJ did not recite the unsupported limitations submitted by Ms. Farrar, the regulations do not require ALJs to address "other source" opinions on a point-by-point basis. This Circuit agrees that "[a]n ALJ can consider all the evidence without directly addressing in h[er] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). It is apparent that the ALJ was aware of the SSR 06-03P requirements,[9] considered Ms. Farrar's opinion, adopted portions therein which were consistent with the record, and declined to adopt unsupported limitations. This is well within the SSR 06-03P requirements. *See Smith v. Colvin*, 2:13-CV-582, 2014 WL 2197940, at *3–4 (S.D. Ohio May 27, 2014) (finding that the ALJ complied with SSR 06-03P when it was apparent that the ALJ had considered the source's opinion in the proper context and was aware of the SSR 06-03P requirements).

### 2. The ALJ Properly Considered Dr. O'Brien's Opinion

Plaintiff next claims the ALJ violated SSR 96-2P and the treating physician rule because Plaintiff's RFC did not include the permanent "no repetitive squatting" restriction imposed by Dr. O'Brien. According to the treating physician rule, ALJs must "give controlling weight to a

---

[9] The ALJ references SSR 06-03P on DE 14, p. 17.

treating physician's opinion as to the nature and severity of the claimant's condition as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Gentry*, 741 F.3d at 723 (quoting 20 C.F.R. § 404.1527(c)(2)). Since the ALJ gave controlling weight to Dr. O'Brien's opinion, the ALJ did not violate this rule.

The ALJ noted Dr. O'Brien's "permanent restriction of no repetitive squatting or kneeling," and it is apparent that the ALJ gave great weight to this opinion since Plaintiff's RFC only permits occasional crouching. (DE 14, pp. 17-18). Squatting and crouching are synonymous.[10] After discussing the limitations imposed by Dr. O'Brien, the ALJ stated, "[a]s such, the claimant's knee pain is adequately accommodated by the [RFC] above which includes time limits regarding sitting and standing, only occasional use of her right lower extremity and only occasional postural activities," which included occasional crouching. (DE 14, pp. 17-18). Although the ALJ did not repeat Dr. O'Brien's terminology, choosing instead to default to the postural limitations referenced by the Dictionary of Occupational Titles,[11] the ALJ did not err in evaluating Dr. O'Brien's opinion.

### 3. The ALJ's Severity Determination Does Not Warrant Reversal

---

[10] Squat: "to sit down in a low or crouching position with the legs drawn up closely beneath or in front of the body . . . to crouch or cower down." The American College Dictionary 1172 (1970). This term is also defined as "to cause to crouch or sit on the ground . . . the act of squatting, crouching, or sitting." Webster's Third New International Dictionary 2215 (1986). The terms are referred to jointly as "crouch/squat" in *Crooks v. Comm'r of Soc. Sec.*, 12-CV-13365, 2013 WL 4502162, at *5 (E.D. Mich. Aug. 22, 2013), *Evans v. Comm'r of Soc. Sec.*, 1:10-CV-779, 2011 WL 6960619, at *3 (S.D. Ohio Dec. 5, 2011) *report and recommendation adopted,* 1:10CV779, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012), and *Collins v. Astrue*, CIV.A. 08-396-JMH, 2009 WL 3711258, at *2 (E.D. Ky. Nov. 4, 2009).

[11] For instance, the Insurance Sales Agent DOT listing does not refer to squatting requirements; it instead refers to crouching requirements, of which there are none. DICOT 250.257-010, 1991 WL 672355. Similarly, the job of Tax Preparer does not require crouching, and the listing does not mention squatting. DICOT 219.362-070, 1991 WL 671965.

According to Plaintiff, her major depressive disorder and asthma should be considered "severe" impairments. She claims the ALJ's decision and rationale for declaring the impairments "non-severe" was in error.

The second step of the disability determination is identifying the claimant's severe impairments. 20 C.F.R. § 404.1520(a)(4). Impairments, individually and combined, are "non-severe" if they do not "significantly limit [the claimant's] physical or mental ability to do basic work activities," which refers to the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521. Establishing the severity of impairments is typically a *de minimis* burden, and an impairment is generally considered non-severe "if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007)). The severity of mental impairments is further evaluated per 20 C.F.R. § 404.1520a. This entails rating the degree of limitation in (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. *Id.* at § 404.1520a(c)(3). Generally, an impairment is non-severe if there are "none" or "mild" limitations in the first three categories and no episodes of decompensation. *Id.* at § 404.1520a(d)(1).

The ALJ did not err in concluding that Plaintiff's depression is a non-severe impairment. With regard to the mental impairment criteria, the ALJ found that (1) Plaintiff's activities of daily living were not limited, (2) Plaintiff had mild limitation in her social functioning, (3) Plaintiff had mild limitations in concentration, persistence, and pace, and (4) Plaintiff had no episodes of decompensation. (DE 14, p. 15). In coming to these conclusions, the ALJ cited to relevant portions of the record, including Plaintiff's responses to agency questionnaires and

Plaintiff's records from the Guidance Center. Although the ALJ was aware that Plaintiff claimed disability in-part due to her asthma (DE 14, p. 17), discussion of the severity of this impairment is absent in the ALJ's otherwise thorough assessment. Regardless, this omission only amounts to harmless error. Because the ALJ found that Plaintiff suffered from at least one severe impairment, the ALJ's assessment progressed past step two of the analysis. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Subsequent RFC analyses consider the limitations imposed by both severe and non-severe impairments. In these circumstances, where the ALJ finds at least one severe impairment, such an omission is not reversible error. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013); *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

### 4. The ALJ Properly Considered Plaintiff's Credibility

Lastly, Plaintiff contends that the ALJ's credibility analysis falls short of the SSR 96-7P requirements. 1999 WL 374186 (July 2, 1996). When presented with claims of pain or other symptoms that are not substantiated by objective medical evidence, the ALJ may make a credibility determination regarding the actual functional effects of the underlying impairment. *Id.* at *1–2. These credibility assessments must find support in the record and be sufficiently specific to facilitate future review. *Id.* at *2. Credibility assessments are a two-step process. The ALJ must first find that the claimant suffers from a physical or mental impairment which could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). Next, the ALJ evaluates the intensity and persistence of the symptoms and their overall effect on the claimant's ability to work. *Id.* In this second step, the ALJ considers all of the evidence in the record, including objective medical evidence and "other" evidence which may consist of (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's

symptoms, (3) precipitating and aggravating factors, (4) medication the claimant uses to alleviate the symptoms, (5) treatment the claimant has received to relieve the symptoms, (6) other measures used to relieve the symptoms, and (7) other factors limiting the claimant's functional capacities. *Id.* at § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247. The ALJ also considers the "[c]onsistency between a claimant's symptom complaints and the other evidence in the record." *Rogers*, 486 F.3d at 248.

The ALJ complied with SSR 96-7P, and the ALJ's credibility determination is supported by substantial evidence. First, the ALJ thoroughly discussed the objective medical evidence in the record. Noting that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent" with Plaintiff's RFC. (DE 14, p. 18). In support of this conclusion, the ALJ discussed the consultative examiner reports, Plaintiff's statements,[12] and records from the Guidance Center. (DE 14, p. 19). The ALJ also noted that "[w]hile the claimant alleges that she can no longer work due to her impairments, she also reported that she currently works as a tax preparer[,] . . . she does not take any medications for those [allegedly disabling] symptoms, with the exception of the over-the-counter ibuprofen to help her sleep[, and] . . . the claimant did not consistently report her symptoms of knee pain." (DE 14, p. 20). In Plaintiff's five visits to the Primary Care & Hope Clinic from 2009 to 2011, the ALJ noted that Plaintiff "failed to even mention her knee impairment at each visit." (DE 14, p. 20). Referring to these discrepancies and the lack of objective medical evidence supporting Plaintiff's claims of disabling symptoms, the

---

[12] Plaintiff contends that the ALJ erred in considering Plaintiff's daily activities in the credibility analysis. (DE 17, p. 12). This argument has no merit since the regulations suggest the claimant's daily activities should be considered, among other factors, in determining the claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3). Furthermore, the ALJ did not place undue weight on these daily activities; rather, the ALJ listed the activities in conjunction with the other factors considered.

ALJ concluding that "[t]he claimant's testimonial exaggeration of limitations and symptoms erode the credibility of her testimony." (DE 14, p. 20). This credibility analysis is much more than a conclusory statement. The ALJ provided specific instances in which Plaintiff's testimony and claims of disabling pain were inconsistent and were furthermore unsupported by the record. Plaintiff's claim of error is therefore without merit.

## IV.   RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (DE 16) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days from receipt of this Report and Recommendation, the parties may serve and file written objections to the findings and recommendations made herein. Fed. R. Civ. P. 72(b)(2). Parties opposing the objections must respond within fourteen (14) days from service of these objections. *Id.* Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** the 15th day of July, 2014,


/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge